IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EVELYN DAVIDSON,

    Plaintiff,                               CIV. NO. S-10-2502 FCD GGH PS

    vs.

CARL E. KORMAN, et al.,

    Defendants.                         FINDINGS AND RECOMMENDATIONS;
_____/            ORDER

        Previously pending on this court's law and motion calendar for December 16, 2010, was defendants' motion for judgment on the pleadings. Plaintiff Evelyn Davidson filed an opposition and appeared telephonically in pro se. Edward Olsen appeared on behalf of defendants. Having heard oral argument and reviewed the record, the court now issues the following findings and recommendations. Previously under submission was defendants' motion to dismiss defendant Carl Korman and to substitute John McHugh for Pete Geren, filed October 1, 2010. These findings and recommendations/order will also address that motion.

BACKGROUND

        This action was filed on April 17, 2009, in the Northern District. It was transferred to this court on September 8, 2010. The only claim remaining on transfer is under Title VII, for retaliation. Plaintiff was employed as a real property transactional attorney for the Army Corps of Engineers' Office of Counsel in Sacramento, from June 26, 2006 to March 9,

1

2007, when she was terminated for performance and conduct problems, according to defendants. Her supervisor was Carl Korman. Currently, defendants are Korman and Pete Geren, former Secretary of the Army. The Northern District previously dismissed plaintiff's other claims.

DISCUSSION

I. Motion to Substitute McHugh for Geren

Defendants move to dismiss defendant Korman because he is not the head of the Department of the Army and is not a proper defendant. This motion is considered below. They also seek to substitute John McHugh, current Secretary of the Army, for Pete Geren, former Secretary of the Army.

Defendant John McHugh will be substituted as defendant in place of Pete Geren. Fed. R. Civ. P. 25(d).

II. Motion for Judgment on the Pleadings

Defendants bring the current motion, arguing that plaintiff did not engage in statutorily protected activity and therefore cannot establish a prima facie case of retaliation under Title VII.

A. Legal Standard

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir.1989). Dismissal may be granted where there is no cognizable legal theory or lack of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.1990). In considering a motion for judgment on the pleadings, the Court accepts all factual allegations in the complaint as true and must construe them in the light most favorable to the non-moving party. Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009). "[A] judgment on the pleadings is appropriate when, even if all allegations in the complaint are true, the moving

2

party is entitled to judgment as a matter of law." Westlands Water Dist. v. Firebaugh Canal, 10 F.3d 667, 670 (9th Cir.1993).

Although a court generally is confined to the pleadings on a Rule 12(c) motion, it may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986), abrogated on other grounds, Astoria Fed. Sav. Etc. v. Solimino, 501 U.S. 104, 111 S.Ct. 2166 (1991). Consideration of these documents outside the complaint will not convert the motion to dismiss into a motion for summary judgment. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir.2003); In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir.1999). The 'incorporation by reference' doctrine has been extended "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

    B. Analysis

Plaintiff alleges retaliation by defendants because she opposed conduct made an unlawful employment practice. Specifically, she claims co-worker Patricia Hawkins, who happened to be the Sacramento Corps Legal Department EEO attorney, made racist remarks about African-Americans. Plaintiff also alleges that she expressed concern to her supervisor, Carl Korman, that a legal research memorandum prepared by someone in the legal department was inadequate, and that this deficient legal research and writing constituted "violation of attorney ethics under the duty of competence." (Compl. ¶¶ 13, 14.) The complaint further claims that plaintiff told her supervisor, Korman, about her concerns regarding violation of sexual

1  harassment laws in the Sacramento Corps Legal Department.  She alleges that Korman's
2  congenial attitude then changed abruptly.  The last allegation is that Korman told her to stop
3  prefacing her research memos with a statement that she was not a member of the state's bar.
4  　　　　　Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., makes it an
5  unlawful employment practice for an employer to "fail or refuse to hire or to discharge any
6  individual, or otherwise to discriminate against any individual with respect to his compensation,
7  terms, conditions, or privileges of employment, because of such individual's *race, color,*
8  *religion, sex, or national origin*."  Id., § 2000e-2(a)(1) (emphasis added).  Section 2000e-16
9  makes the substantive provisions of Title VII applicable to federal agencies.  If the employer
10  permits the work environment to be permeated by hostility based on the emphasized protected
11  categories, this hostile work environment itself violates Title VII.  Meritor Savings Bank v.
12  Vinson, 477 U.S. 57, 106 S.Ct. 2399 (1986).
13  　　　　　A suit for retaliation may be brought under Title VII which provides in part:
14  　　　　It shall be an unlawful employment practice for an employer to
　　　　discriminate against any of his employees . . . because he has
15  　　　　opposed any practice made an unlawful employment practice by
　　　　this subchapter, or because he has made a charge, testified,
16  　　　　assisted, or participated in any manner in an investigation,
　　　　proceeding, or hearing under this subchapter.
17
18  42 U.S.C. § 2000e-3(a).
19  　　　　　This section protects an employee or former employee from retaliation as a result
20  of engaging in activity protected by Title VII.  Arnold v. U.S., 816 F.2d 1306, 1310 (9th Cir.
21  1987); Richardson v. Restaurant Marketing Associates, Inc., 527 F. Supp. 690, 695 (N.D. Cal.
22  1981).  In a retaliation case, this circuit follows the general rule regarding proof as set forth in
23  McDonnell Douglas.  Thus: (1) plaintiff must establish a prima facie case; (2) defendant must
24  then come forward with legitimate nondiscriminatory reasons for the action; and (3) plaintiff has
25  the final burden to show that the action was a pretext for retaliation.  Steiner v. Showboat
26  Operating Co., 25 F.3d 1459, 1464-65 (9th Cir. 1994).

1. <u>Defendant Korman</u>

Defendant Korman should be dismissed because he is not the head of a department, agency or unit under Title VII. 42 U.S.C. §2000e-16(c). According to defendants, at the time of the actions complained of, Korman was a "supervisory general attorney for the Sacramento District of the United States Army Corps of Engineers." (Korman Decl. ¶ 2.) The Ninth Circuit has held that individual employees, including supervisory employees, cannot be held liable for damages under Title VII. <u>Miller v. Maxwell's International, Inc.</u>, 991 F.2d 583, 587-588 (9th Cir. 1993). Although this act defines "employer" to include "any agent" of the employer (42 U.S.C. § 2000e(b) ), the Ninth Circuit has construed these provisions "to incorporate respondeat superior liability into the statute[s]" rather than impose "employer liability" on the employee. <u>Id.</u>, at 587, quoting <u>Padway v. Palches</u>, 665 F.2d 965, 968 (9th Cir. 1982). Thus, "civil liability for employment discrimination does not extend to individual agents of the employer who committed the violations, even if that agent is a supervisory employee." <u>Pink v. Modoc Indian Health Project, Inc.</u>, 157 F.3d 1185, 1189 (9th Cir. 1998). Thus, only the employer may be held liable under Title VII, and defendant Korman should be dismissed.

Each category of activity which plaintiff alleges violates Title VII will be addressed separately.[1]

2. <u>Attorney Inadequacies</u>

Plaintiff specifically claims that she informed her supervisor, Carl Korman, that a "prior 'legal research' memorandum in the Sacramento Corps Legal Department was limited to research of the facts without legal analysis but nevertheless had made a conclusion of law which deficiency could cost the Army Corps substantial sums," he responded only by stating that there

---

[1] Although the parties continue to refer to unlawful interference with attorney ethics rules, by preventing "plaintiff from disclaiming membership in state bars of which she is not a member," this claim was dismissed by order of September 3, 2010. (Compl. ¶ 33, Dkt. # 40.) To the extent that plaintiff continues to maintain that this allegation supports her claim of retaliation, it does not concern race, color, religion, sex, or national origin under Title VII.

were many ways to conduct legal research. (Compl. ¶ 13.) This allegation does not raise a claim under Title VII because it does not concern race, color, religion, sex, or national origin. Defendants' motion should granted in this regard.

### 3. Racist Comments

Plaintiff claims that Patricia Hawkins, the Sacramento Corps Legal Department EEO attorney, made two racist remarks about African-Americans. First, she told plaintiff in August, 2006, that "the only reason a federal judge had given an African-American Corps engineer's young son a commendation plaque was because the judge was Black." (Compl. ¶ 10.) In September, 2006, Ms. Hawkins allegedly informed plaintiff that she "had had trouble working with Blacks when she practiced law as an attorney in Hawaii." (Id. at ¶ 11.) Although not clear from the Complaint, it appears that plaintiff reported these comments to her supervisor, Korman, and that her termination came about in part motivated by her opposition to this alleged violation of Title VII, i.e., a racially hostile work environment.

To the extent that defendants argue that plaintiff, as a Caucasian employee, may not claim a hostile work environment based on discrimination directed to African-Americans, they are incorrect. Claims of retaliation may be asserted by white plaintiffs who oppose discriminatory practices directed towards any race. Maynard v. City of San Jose, 37 F.3d 1396, 1403 (9th Cir. 1994) (a 42 U.S.C. section 1983 case citing *inter alia* Title VII cases).

Defendants cite to Silver v. KCA, Inc., 586 F.2d 138 (9th Cir. 1978), for the assertion that "[t]he opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual." Id. at 141. This statement by Silver has been modified by later cases such as that cited by plaintiff at hearing, which have held that racially discriminatory conduct by a co-worker who is an agent of the employer can be imputed to the employer. E.E.O.C. v. Crown Zellerbach Corp., 720 F.2d 1008, 1013-14. The plaintiff is required to show only a reasonable belief that the employment practice was prohibited by Title VII to establish that she engaged in protected activity. Id. at 1015, n.4; Trent v. Valley

6

1  Elec. Ass'n, Inc., 41 F.3d 524, 526 (9th Cir. 1994).

2              Nevertheless, looking only at plaintiff's belief, the undersigned does not find that
3  plaintiff's reaction to Ms. Hawkins' comments was reasonable.  The only possible Title VII
4  violation being opposed by plaintiff was one of hostile environment.  That is, plaintiff was not
5  opposing the lack of promotion, termination or discipline of a member of a certain race or
6  ethnicity.  Those things did not happen.  She could only be opposing the comments made by a
7  co-worker.  The court infers from the complaint that plaintiff reported these comments to the
8  Sacramento supervisor, Korman, and that ultimately these reports formed a basis for her
9  termination.  And it is not dispositive whether plaintiff was ultimately correct in her perception
10 that such comments created a hostile environment; she need only have maintained a *reasonable*
11 *belief* that such was the case.

12             However, a "reasonable belief" does not equate to any subjective relief however
13 strained, or however sensitive the hearer may be.  Title VII requires a bit of objectivity in that the
14 belief must be reasonable, i.e., could the reasonable person have formed a belief that such
15 comments rose to the level of creating a hostile environment.  A hostile environment is one so
16 "'severe or pervasive' as to "'alter the conditions of [the victim's] employment and create an
17 abusive working environment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 786, 118 S.Ct.
18 2275, 2283 (1998).  "'([M]ere utterance of an ethnic or racial epithet which engenders offensive
19 feeling in an employee' would not sufficiently alter terms and conditions of employment to
20 violate Title VII)." Id. at 787.  "'[A] lack of racial sensitivity does not, alone, amount to
21 actionable harassment." Id.

22             Under these definitions, no reasonable person could have believed that her
23 conditions of employment were altered in the Title VII sense by the Hawkins comments.  On the
24 scale of 1-10 where 5 crosses the line into harassment, the present comments at issue score a 1,
25 or 2, at best.  While a 4 might be perceived as a reasonable belief, if ultimately not harassing, the
26 1 or 2 here falls far short of reasonable.

1    Plaintiff argues that Hawkins was under a higher ethical duty due to the nature of
2 her position, citing Rose v. General Dynamics, 7 Cal.4th 1164, 1172 (1994).  That California
3 case is not binding on this court, and the undersigned is unaware of any binding authority
4 imposing a higher duty of conduct on an attorney, or an attorney specializing in or supervising
5 EEO claims, under Title VII.

6    3.  Sexual Harassment

7    Plaintiff further alleges that her supervisor, Korman, engaged in some
8 inappropriate conversation with her which violated Title VII.  He allegedly described his uncle's
9 telephone sex business, the female employees there, and his uncle's sexual behavior, including
10 his sexual activity with a woman at a family function.  (Compl., ¶ 15.)   The complaint continues:

> Plaintiff tried to let Defendant Korman know she did not want to
> hear about it and finally got up from her desk and started to leave.
> Defendant Korman also mentioned that he had once had an
> employee who looked at photos of nude women on the Army
> Corps office computer for which a month without pay had been the
> suggested discipline, but that Defendant Korman had himself
> prevented such discipline because it was not, he said, a violation of
> law in his opinion to 'look at work at photos of female genitals.'

15 (Id.)

16    When plaintiff voiced her concerns regarding violation of sexual harassment laws
17 in the Sacramento Corps Legal Department, she claims that Korman's congenial attitude then
18 changed abruptly.  (Compl. ¶ 17.)

19    Defendants first argue that plaintiff did not allege that she opposed Korman's
20 conduct to anyone else in the office, but do not cite authority for the proposition that she must do
21 so.  The purpose behind the reporting requirement is met by opposing the conduct to the
22 supervisor who is allegedly violating Title VII.  See Jordan v. Alternative Resources Corp., 458
23 F.3d 332, 354 (4th Cir. 2006) (purpose of reporting conduct is to prevent hostile work
24 environments from developing and report to employer was sufficient).  It is acceptable to oppose
25 the conduct by reporting it to supervisors, a human resources manager, or a director.  Pittman v.
26 Housing Authority of City of South, 695 F.Supp.2d 866, 877 (N.D. Ind. 2010).   The courts

reason that "an employer cannot retaliate when it is unaware of any complaints." Id., (quoting Sitar v. Ind. Dept. of Transp., 344 F.3d 720, 727 (7th Cir. 2003). If the supervisor himself is the offending person, the employer is often per se "aware." Faragher, 524 U.S. at 807, 118 S. Ct. at 2293. Defendant's first argument fails.

Defendants' second argument is well taken and the complaint contains facts sufficient to determine the motion on this basis. No reasonable person would think that Korman's statements violated Title VII in the sense that such a person would reasonably believe that these comments created a sexually hostile work environment. Title VII requires that a plaintiff have a "reasonable belief" that the employment practice she complained of was prohibited under Title VII.

As previously set forth, a hostile work environment requires a pattern of persistent harassment severe enough to alter the conditions of employment and create an abusive working environment. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270, 121 S.Ct. 1508 (2001). Generally, this standard demands more than isolated or sporadic incidents of harassment, off-color jokes, sexual horseplay or inappropriate behavior. Candelore v. Clark County Sanitation Dist., 975 F.2d 588, 590 (9th Cir.1992); Jordan v. Clark, 847 F.2d 1368, 1374-75 (9th Cir.1988); Benitez v. PGE, 799 F.Supp. 1075, 1080-81 (D.Or.1992); Brooks v. City of San Mateo, 229 F.3d 917 (9th Cir.2000); Kortan v. California Youth Authority, 217 F.3d 1104 (9th Cir.2000). Although the victim must perceive the environment as abusive, the environment must be one that a reasonable person would find hostile or abusive. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367 (1993).

Defendants' citation to Clark County Sch. Dist. v. Breeden, 532 U.S. 268 (2001), is instructive. That case involved an interview process, during which a female plaintiff's supervisor read a comment that one of the job applicants allegedly commented to a co-worker, "I hear making love to you is like making love to the Grand Canyon." The supervisor looked at the plaintiff and said he didn't know what that meant. A different employee said he would explain

later, and both men chuckled. The plaintiff later complained and was punished. The Supreme Court ruled that this isolated incident was not severe or pervasive.

Again, understanding that only a reasonable belief of a hostile environment is necessary, plaintiff's allegations here score higher on the spectrum scale of offensive conduct than was the case for the racial comments discussed earlier. However, try as the undersigned might, the resultant score could be no higher than a 3. While the above comments, or one's like them, if repeated on many occasions could certainly qualify as a hostile environment, the decidedly isolated nature of these comments makes them insufficient for a hostile environment, and importantly here, not *reasonably* perceivable as having created a hostile environment based on sexual harassment.

The court has considered the recent case of EEOC v. Go Daddy Software, 581 F.3d 951, 964 (9th Cir. 2009), a case with somewhat similar circumstances. The religious/ethnic offensive language complained about, and which was found sufficient, was admittedly sparse. However, the Ninth Circuit found that the language used could have been perceived as more personal to plaintiff, and hence, plaintiff's objecting about it constituted a reasonable belief in a hostile environment. The language here was not directed to plaintiff personally, at all – it was not a comment on her appearance or practices. In the present case, the generally related sexual banter was simply too unrelated to the work environment and isolated. While no person should have to endure a seemingly endless stream of sex based comments in the workplace, Title VII should not be developed as a speech code for the hypersensitive.

Dismissal of a pro se complaint without leave to amend is proper only if it is clear that the deficiencies of the complaint could not be cured by amendment. Noll v. Carlson, 809 F.2d 1446 (9th Cir. 1987). Unless it is clear that no amendment can cure the defect, a pro se litigant proceeding in forma pauperis is entitled to notice and an opportunity to amend the complaint before dismissal. See Id. at 1448; Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir. 1984).

It appears to the undersigned that no amendment can cure the aforementioned defects, with respect to the racial hostile environment, retaliation claim.  However, the undersigned determines differently for the alleged retaliation on account of opposing a sexually hostile environment claim.  Although presently insufficient, it may be that plaintiff can assert other instances of inappropriate comments, i.e., more pervasive or severe comments.

CONCLUSION

Accordingly, IT IS ORDERED that John McHugh is substituted for Pete Geren; IT IS RECOMMENDED that:

1. Defendants' motion to dismiss Carl Korman, filed October 1, 2010, (dkt. #43), be granted.  Defendant Korman should be dismissed as an improper party and, as ordered above, defendant McHugh will be substituted in place of defendant Geren.

2. Defendants' motion for judgment on the pleadings, filed November 12, 2010, (dkt. #56),  be granted with leave to amend;

3. Plaintiff be permitted to amend her complaint with respect to the sexual harassment hostile environment, retaliation claim within twenty-one days after adoption of these Findings and Recommendations, if adopted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.  The

\\\\\

\\\\\

\\\\\

\\\\\

1 parties are advised that failure to file objections within the specified time may waive the right to
2 appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3 DATED: December 30, 2010

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U. S. MAGISTRATE JUDGE

GGH:076:Davidson2502.mtn